329 A.2d 477
PENNSYLVANIA LABOR RELATIONS BOARD, Appellant,

v.

Erika S. M. ZELEM, Appellee.

TEAMSTERS LOCAL UNION NO. 8, Appellant,

v.

Erika S. M. ZELEM, Appellee.

Supreme Court of Pennsylvania.

Argued Nov. 16, 1973.

Decided Dec. 5, 1974.

400

Louis B. Kushner, Rothman, Gordon, Foreman & Groudine, Pittsburg, for appellant in No. 336.

Israel Packel, Atty. Gen., Francis A. Zulli, Asst. Atty. Gen., Harrisburg, for appellant in No. 337.

Thomas E. Sterling, J. F. Wildeman, Harrisburg, State College, for appellee, Erika S. M. Zelem.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

In 1966, Erika S. M. Zelem, appellee, became a laboratory technician at the Veterinary Science Division of Pennsylvania State University. On October 1, 1967, the university entered into a collective bargaining agreement (Agreement I) with Teamsters Local Union No. 8, one of the appellants and the employee organization representing the bargaining unit of which Miss Zelem was a member. The agreement, which was extended by mutual consent to June 30, 1970, contained a union security provision best described as a modified-agency shop. Under its terms, all employees who were members of the bargaining unit, but who had not joined the union, were required to pay to the union an amount equal to the regular initiation fees and dues as a condition of employment. However, Agreement I specifically exempted those non-

member employees whose employment predated the agreement. Appellee, who had never joined the union, was thus exempt from the agency-shop provisions.

A renewal contract (Agreement II) was subsequently executed between the union and the university, effective for the period from July 1, 1970 to May 31, 1973. This contract contained a strict agency-shop provision by the terms of which all employees, including those in the position of appellee, were required to pay the equivalent of the union's regular initiation fees and the union dues. In order to avoid discharge, appellee paid under protest, but she then filed a complaint charging the university and the union with an unfair labor practice under § 1201 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.101 et seq.

The Pennsylvania Labor Relations Board ("board"), also an appellant, issued a nisi decision and order, joined in by two members with one member dissenting, sustaining a finding of an unfair labor practice. It then reversed itself and entered a final order, with one member dissenting, upholding the challenged union security provision. On appeal, the Court of Common Pleas of Centre County reversed the board and found in favor of appellee. An equally-divided Commonwealth Court affirmed that decision, and we granted allocatur petitions filed by the union and the board, because the case raises an important question concerning the proper interpretation of § 904 of PERA and its relationship to other provisions of the act, particularly §§ 401 and 705.

In determining the extent to which a public employer, such as the university, and a union are permitted to agree to a union security provision, there are three pertinent provisions of the act.

Section 401, while permitting public employees to join an employee organization or to engage in lawful concert-

ed activities for purposes of collective bargaining, specifically states that:

"... such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a *maintenance of membership* provision in a collective bargaining agreement." (Emphasis supplied.)

Section 301(18) defines the term "maintenance of membership" to mean:

"all employes who have joined an employe organization or who join the employe organization in the future must remain members for the duration of a collective bargaining agreement so providing with the proviso that any such employe or employes may resign from such employe organization during a period of fifteen days prior to the expiration of any agreement."

Finally, § 705 provides:

"Membership dues deductions and maintenance of membership are proper subjects of bargaining with the proviso that as to the latter, the payment of dues and assessments *while members,* may be the only requisite employment condition." (Emphasis supplied.)

All parties agree that, by these provisions, an "agency shop" is no longer permitted in a bargaining agreement between a union and a public employer. Rather, maintenance of membership is the maximum union security provision permitted. The problem arises in the instant case because of the "grandfather" provisions of § 904 of the act, entitled "Existing agreement; provisions inconsistent with act." Section 904 provides:

"Any provision of any collective bargaining agreement in existence on January 1, 1970 which is inconsistent with any provision of this act but not otherwise illegal shall continue valid until the expiration of such contract. The parties to such agreements *may continue voluntarily to bargain on any such items* after the

expiration date of any such agreement and for so long as these items remain in any future agreement." (Emphasis supplied.)

■ Appellee contended, and the Centre County Court agreed, that since Agreement II, which created the strict-agency shop and obligated appellee to support the union, did not take effect until July 1, 1970, it did not come within the exclusions of § 904 and was rendered illegal under the general provisions of §§ 301, 401 and 705. The union and the board argue, however, that the strict-agency-shop provision of Agreement II, which took effect on July 1, 1970, was simply a modification of the modified-agency-shop provision of Agreement I, and that such a modification is specifically permitted by § 904, which allowed the parties to "continue voluntarily to bargain" on "items," such as the agency-shop provision, which were included in collective bargaining agreements in existence on January 1, 1970, but which were inconsistent with the statute.

We do not accept this interpretation of the statute. There was no "item" directly involving appellee in Agreement I. Instead, Agreement I contained only a modified-agency-shop provision which did not affect her. Section 904 only permitted the parties to "bargain" on that provision, even though it was no longer permitted in new contracts reached subsequent to January 1, 1970.

■ The union and the board urge that our interpretation of the statute does not give to the word "bargain" its "common and approved usage," as is required by § 33 of the Statutory Construction Act.[1] We disagree. While it is true, as the board argues in its brief, that "bargain," when used as a verb, usually connotes "a give and take procedure," [2] as to the provision in question, there

1. Act of May 28, 1937, P.L. 1019, Art. III, § 33, 46 P.S. § 533.
2. *Bargain:* "To negotiate over the terms of an agreement or contract, to agree to certain terms or conditions, to come to terms,

was no "give" on the part of either the union or the employer. The obligation provided for was solely that of appellee and others of her status. They were, admittedly, not part of the bargaining process. In such a situation, we believe that permitting the parties "to bargain" meant that they could again agree to the modified-agency-shop provision. It did not mean that they could enlarge the now forbidden practice to include those not previously bound by it.

■■ The union argues that the application of § 904 to collective bargaining agreements such as Agreement II, which became effective after January 1, 1970, but before the statute was enacted on July 23, 1970, is unconstitutional. While the union admits that a statute passed in a legitimate exercise of the police power of the Commonwealth will be upheld even if it incidentally destroys an existing contractual right, *DePaul v. Kauffman,* 441 Pa. 386, 272 A.2d 500 (1972), it argues that the Commonwealth's exercise of its police power here was "arbitrary and oppressive" and, therefore, unconstitutional. *El Paso v. Simmons,* 379 U.S. 497, 509, 85 S.Ct. 577, 13 L.Ed.2d 446 (1938).

In our view, this argument is without merit. No contractual obligation was impaired by the application of § 904 to Agreement II. The only obligation affected was that purportedly placed on appellee and others of her status—the obligation to pay the equivalent of dues and initiation fees to the union. Such an obligation cannot be considered contractual, since appellee and the others were not parties to the contract. When such an obligation is permitted, it is only by reason of the provisions of the National Labor Relations Act [3] or, in the instant

to engage in collective bargaining, to reach an agreement, to haggle." Webster's Third New International Dictionary (Unabridged, 1971).

**3.** 29 U.S.C.A. 158(a)(3).

case, the Pennsylvania Labor Relations Act.[4]  Thus, what has been impaired by § 904 is not a contractual obligation owed by appellee to the union, but rather the continuation of the union's statutory right to bind nonconsenting, nonmembers, such as appellee, to contractual provisions requiring employees to pay union dues.  This is not the type of "contractual right" protected by the constitutional prohibition against the impairment of contracts.

■  The only type of contractual obligation which § 10 of Article I of the United States Constitution and § 17 of Article I of the Pennsylvania Constitution were designed to protect, is the obligation agreed upon by the obligor in return for consideration received by the obligee.  As the United States Supreme Court stated in the case of *Crane v. Hahlo,* 258 U.S. 142, 146, 42 S.Ct. 214, 215, 66 L.Ed. 514 (1922):

".  .  .  [i]t has long been settled by decisions of this court that the word 'contracts' in section 10 of article 1 of the Constitution is used in its usual or popular sense as signifying an agreement of two or more minds, upon sufficient consideration, to do or not to do certain acts."

■  It follows that the passage of a law impairing an obligation to which there has been no consent cannot violate the contract clause.  See *Livingston's Lessee v. Moore,* 32 U.S. (7 Pet.) 469, 8 L.Ed. 751 (1833).

Order of the Commonwealth Court, affirming the order of the Court of Common Pleas of Centre County, is affirmed.

NIX, J., filed a dissenting opinion in which EAGEN and MANDERINO, JJ., join.

---

4.  Act of June 1, 1937, P.L. 1168, No. 294, § 6;  June 9, 1939, P.L. 293, § 1;  July 7, 1947, P.L. 1445, § 1, 43 P.S. § 211.6(c).

NIX, Justice (dissenting).

I am constrained to express my emphatic disagreement with the majority's interpretation of the language appearing in section 904 of the Public Employe Relations Act [1] and the relationship of this section to the other provisions of the act, particularly sections 401 and 705.

In determining the permissible extent of a union security provision there are three pertinent provisions to be read.

Section 401 which declares parameters of employe rights under the Act reads:

"It shall be lawful for public employes to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and *such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision in a collective bargaining agreement.*" (Emphasis Added).[2]

Section 705 of PERA provides:

"Membership dues deductions and *maintenance of membership* are proper subjects of bargaining with the *proviso that as to the latter, the payment of dues and assessments while members, may be the only requisite* employment condition." (Emphasis added).

1. Act of July 23, 1970, P.L. 563, 43 P.S. 1101.101 et seq.

2. Section 301(18) defines the term "maintenance of membership" as follows:
   "Maintenance of membership" means that *all employes who have joined an employe organization* or who join the employe organization in the future *must remain members for the duration of a collective bargaining agreement* so providing with the *proviso that any such employe or employes may resign from such employe organization during a period of fifteen days prior to the expiration of any such agreement.*" (Emphasis added).

The PERA clearly, by these sections, sets forth a maintenance of membership shop as the maximum union security provision that can be made part of a public employe bargaining agreement. The core of the dispute which has given rise to this lawsuit centers around the nature of the exception to this rule that is provided by section 904 of the Act. Section 904 entitled "Existing agreements; provisions inconsistent with [the] act" reads:

"Any provision of any collective bargaining agreement in existence on January 1, 1970 which is inconsistent with any provision of this act but not otherwise illegal shall continue valid until the expiration of such contract. The parties to such agreements may continue voluntarily to bargain on any such items after the expiration date of any such agreement and for so long as these items remain in any future agreement."

The majority concedes the legality of an agency shop security agreement in Pennsylvania prior to the enactment of the PERA. My disagreement arises from their determination that the word "bargaining" should be construed to mean that while the parties in the future may diminish the protection afforded by future agency shop agreements to the Union, those protections cannot be enhanced although the security arrangement remains a type of agency shop. Such a determination distorts the common and approved usage of the word "bargaining" and ignores the fundamental purpose of the legislation.

The Statutory Construction Act [3] states that "[w]ords and phrases shall be construed according to [the] rules of grammar and according to their common and approved usage . . ." or if they have "acquired a peculiar and appropriate meaning", that meaning shall be

3. Act of November 25, 1970, P.L. 707, No. 230, added, Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa. S. 1903.

applied.  The legal and etymological history [4] of the word "bargain" provides a concept of give and take at arm's length to reach a mutually agreed position.  Thus, the use of the word bargain in the second sentence fails to connote as the majority suggests that the type of agency shop may not be modified either to enhance or decrease the protection afforded.  To the contrary, the clear meaning of the words require an interpretation that the existence of a union security agreement providing for an agency shop on the specified date permits the parties to negotiate subsequent contracts also containing an agency shop provision, the only limitation being that it not be in violation of earlier laws.  The clause "[t]he parties to such agreements may continue voluntarily to bargain on any such items" clearly expresses the right to agree upon an agency shop not permitted by PERA but otherwise permissible under the laws of this Commonwealth.  The word "bargaining" unquestionably relates to the item, an agency shop, and there is a complete absence of any language which would limit the terms of the bargaining to the terms of the existing security provision.

The majority while seeming to accept the traditional definition of the verb "bargain", attempts nevertheless to justify a distortion of its meaning in this instance by suggesting that the rights of those not a party to the bargaining process are being affected.  This reasoning disregards the patent fact that the term "bargain" was used by the legislature in this section to define the rights of those who were in fact participating in the bargaining process.  It further ignores the practical reality that these alleged forgotten souls are attempting to receive

---

4. *Bargain:* "To negotiate over the terms of an agreement or contracts, to agree to certain terms or conditions, to come to terms, to engage in collective bargaining, to reach an agreement, to haggle."  Webster's Third New International Dictionary (Unabridged) (1971).

the benefits of union membership, while avoiding accept-ance of its responsibilities.

We are also persuaded that such a construction is con-sistent with the public policy expressed in Section 101 of the Act. Section 101 provides:

> "The General Assembly of the Commonwealth of Pennsylvania declares that it is the public policy of this Commonwealth and the purpose of this act to pro-mote orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Common-wealth to keep inviolate the guarantees for their health, safety and welfare. Unresolved disputes be-tween the public employer and its employes are inju-rious to the public and the General Assembly is there-fore aware that adequate means must be established for minimizing them and providing for their resolu-tion. Within the limitations imposed upon the govern-mental processes by these rights of the public at large and recognizing that harmonious relationships are re-quired between the public employer and its employes, the General Assembly has determined that the overall policy may best be accomplished by (1) granting to public employes the right to organize and choose freely their representatives; (2) requiring public employers to negotiate and bargain with employe organizations representing public employes and to enter into written agreements evidencing the result of such bargaining; and (3) establishing procedures to provide for the pro-tection of the rights of the public employe, the public employer and the public at large."

Section 904, as I interpret it, recognizes the assistance to the orderly and constructive relationship between public employer and employe by allowing a continuation, as a subject for bargaining, of that which in past agreements has assisted in providing a basis for a meeting of the minds. While the act also seeks to protect the right of

the employe to "organize and choose freely their representatives", this aim cannot be achieved by introducing discord where harmony formerly prevailed.

It is therefore my judgment that the union security provision contained within the agreement executed July 1, 1970, was permitted under the PERA and that the payments made by the appellee thereunder were properly paid.

EAGEN and MANDERINO, JJ., join in this dissent.