Diane V. ZORICA, Dorothy Ann Byrne, Carolyn D. Coleman, Edwardo Fonseca, Jean Frazier, Petra Johns, Norman Lampert, Kathleen M. Meehan, Catherine M. Minner, Delores Mitchell, Leonard M. Newman, Margaret L. Sadoff, Frank X. Stavola, Maddeline C. Wahl, Jean D. Wells, Gerald J. Wierchinski, Jacqueline Zenszer, Appellants

v.

AFSCME DISTRICT COUNCIL 33, City of Philadelphia and American Federation of State County and Municipal Employees, AFL–CIO (AFSCME) and Pennsylvania Labor Relations Board.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 1996.

Decided Dec. 13, 1996.

Raymond J. LaJeunesse, Jr., Doylestown, for appellants.

Richard Kirschner, Washington, for appellee, AFSCME and AFSCME Council 13.

Samuel Spear, Philadelphia, for appellee, AFSCME District Council 33 and City of Philadelphia.

**462**

John B. Neurohr, Harrisburg, for appellee, PLRB.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, FRIEDMAN, FLAHERTY and LEADBETTER, JJ.

FLAHERTY, Judge.

■ Zorica et al. (Fee Payers), who are employees of the City of Philadelphia (City), appeal from an order of the Court of Common Pleas of Philadelphia County (trial court) affirming a Final Order of the Pennsylvania Labor Relations Board (PLRB or Board). The Board reversed the rulings of a Hearing Examiner and held that the City and District Council 33 of the American Federation of State, County, and Municipal Employees (Council 33) did not commit unfair labor practices under Sections 1201(a)(1) and 1201(b)(1) of the Public Employe Relations Act (PERA)[1] by requiring the payment of "fair share" fees[2] by the employees in question. We affirm.

■ In 1961 the City passed an ordinance authorizing the Mayor to enter into a collective bargaining agreement (CBA) with Council 33 and specifying that the agreement should be in "substantially the ... form" of the sample agreement set forth in the ordinance. (R.R. 40a.) The agreement thereafter entered between the City and Council 33 was a "modified" union shop agreement,[3] which provided that all employees hired after the adoption of the ordinance on April 4, 1961 were required to join the union as a condition of employment. Employees hired before that date, if presently members, were required to remain in the union. Those who were employees on that date but were not union members were not required to join the union.

In 1970 the Pennsylvania General Assembly enacted PERA, which restricted the impact of CBAs in that they could provide for "maintenance of membership"[4] as the only condition of employment. Sections 401, 705 of PERA, *repealed by* Public Employee Fair Share Fee Law (Fair Share Law), Act of June 2, 1993, P.L. 45, 43 P.S. §§ 1102.1–1102.9. Because the 1961 CBA between the City and Council 33 conflicted with this provision in that it required union membership for all new employees as opposed to merely "maintenance of membership," a "savings clause" was included in Section 2003 of PERA[5] to protect the bargaining arrangement between the City and Council 33.

Subsequently, decisions by the U.S. Supreme Court[6] found that the strict union

---

1. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.1201(a)(1), (b)(1). These sections provide that acts by public employers and unions, respectively, in "[i]nterfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act [prohibiting compulsory unionism other than 'maintenance of membership' agreements]" shall constitute unfair trade practices. *Id.*

2. A "fair share" fee is a union security device by which an employer deducts fees from the pay of employees who are represented by, but not members of, a union. These fees are transmitted to the union to pay nonmembers' proportionate share of the costs of collective bargaining; however, the fee does not include union expenses for political or ideological activities.

3. A "union shop" agreement is a union security device requiring union membership as a condition of employment. The 1961 agreement was a "modified" union shop agreement because it *provided* an annual fifteen-day window during which any union member could withdraw from membership in the union; however, this window period for withdrawal was only permissive because, under the ordinance and the agreement executed pursuant thereto, Council 33 and the City could mutually agree to abolish this provision.

4. "Maintenance of membership" means that all employees who have joined a union or who join in the future must remain members for the duration of that collective bargaining agreement, with the proviso that employees may resign from the union during the fifteen-day period prior to the expiration of the agreement.

5. That clause provides, in pertinent part, as follows:

   Present provisions of an ordinance of the City of Philadelphia approved April 4, 1961 ... which are inconsistent with the provisions of this act shall remain in full force and effect so long as the present provisions of that ordinance are valid and operative.

   43 P.S. § 1101.2003.

6. *Chicago Teachers Union, Local No.1 v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) (requiring public employers and unions to

shop security device was unconstitutional in the public sector and recognized the use of a "fair share" fee system as a permissible union security device. Thereafter, in 1989 Council 33 agreed to accept "fair share" fees in lieu of the modified union shop agreement with the City as its sole form of union security.

Fee Payers in this case are City employees whose job classifications fall within the category of employees to be represented by Council 33 for purposes of collective bargaining but who have chosen not to become members of that union. On April 30, 1990, Fee Payers filed charges with the PLRB, alleging that the City and Council 33 committed unfair labor practices by implementing the 1989 fair share fee agreement. After the complaints were consolidated and the American Federation of State, County, and Municipal Employees International Union, AFL–CIO, (AFSCME) was allowed to intervene, a Hearing Examiner issued a Proposed Decision and Order finding that the City and Council 33 had committed unfair labor practices and requiring them to rescind the 1989 agreement and return any fees plus 6% interest to nonmember employees.

■ Subsequently, the PLRB issued a Final Order unanimously vacating the Hearing Examiner's decision and dismissing the charges of unfair labor practices against the City and Council 33. The Board reasoned that the 1961 ordinance, by providing that any agreement must be in "substantially the ... form" of the sample agreement provided therein, incorporated a flexible approach to the City's right to enter a CBA with Council 33, and contemplated not only the terms of the 1961 agreement as of the date PERA was enacted, but also any terms which are consistent with the 1961 ordinance. Because it reasoned that the sample agreement allowed for the City and Council 33 to impose a strict union shop agreement in the future by mutually agreeing to abolish the annual fifteen-day period in which members could withdraw from the union, the Board found that the "fair share" fee agreement, which it deemed a less compulsory form of union security, was consistent with the 1961 ordinance and therefore did not violate PERA. The trial court affirmed.[7] On appeal to this court,[8] the sole issue is whether the Board and the trial court erred in concluding that the 1989 "fair share" agreement between the City and Council 33 was authorized by the "savings clause" of Section 2003 of PERA and the 1961 City ordinance.

■ Fee Payers argue that Section 2003 of PERA does not save the "fair share" agreement because that section only grandfathered the "present provisions" of the 1961 ordinance, which included the "maintenance of membership" agreement. Fee Payers assert that the Board and trial court erred in concluding that the "fair share" agreement was a less compulsory form of union security device than that authorized by the 1961 ordinance, because the "fair share" agreement

---

spell out the procedures for computing and reviewing the amount of "fair share" fees paid by non-union employees); *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977)(holding that requiring public employees, including non-union employees, to pay fees to defray the costs of collective bargaining activities is permissible except that no part thereof may be used in support of ideological causes).

7. On June 2, 1993, while the action was pending before the trial court, the Commonwealth enacted the Public Employee Fair Share Fee Law, which authorized the charging of fair share fees by all political subdivisions and repealed portions of PERA insofar as they were inconsistent. Therefore, it is only the propriety of the fees collected between the passage of the 1989 ordinance and the June 2, 1993 effective date of the Fair Share Law that are currently at issue.

8. Our scope of review is limited to determining whether the findings of the PLRB are supported by substantial evidence and whether the conclusions based upon those findings are reasonable and not arbitrary, capricious or incorrect as a matter of law. *City of Philadelphia v. Pennsylvania Labor Relations Board*, 140 Pa.Cmwlth. 322, 592 A.2d 823 (1991). Moreover, in *Philadelphia Correctional Officers v. Pennsylvania Labor Relations Board*, 667 A.2d 459 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 544 Pa. 639, 675 A.2d 1254 (1996), wherein the PLRB's interpretation of Section 2003 of PERA was similarly at issue, this court previously stated that the PLRB should be shown deference as it possesses administrative expertise in the area of public employee labor relations; as such, this court will not lightly substitute its judgment for that of the PLRB.

requires certain employees to pay fees to the union who had no such obligation under the prior "maintenance of membership" agreement.[9] As such, Fee Payers argue that the Pennsylvania Supreme Court's decision in *Pennsylvania Labor Relations Board v. Zelem*, 459 Pa. 399, 329 A.2d 477 (1974), mandates the conclusion that the "fair share" agreement was not saved by Section 2003 of PERA. Lastly, Fee Payers refer to numerous rules of statutory construction in support of their contention that the PLRB's interpretation of Section 2003 was erroneous.

Initially, we reject Fee Payers' assertion that Section 2003 only grandfathered the provisions of the ordinance as they existed in 1961. The ordinance itself authorizes the City and Council 33 to enter into any agreement that is "in substantially the ... form" of the sample agreement provided. As such, it explicitly contemplates future modification of the precise terms contained in the sample agreement. Because Section 2003 saved the whole of the 1961 ordinance, we agree with the Board's assertion that the Legislature intended to give the parties some measure of flexibility in reaching a collective bargaining agreement and did not intend to freeze the terms of that agreement to those contained in the sample provided. In *Philadelphia Correctional Officers*, this court addressed an argument similar to that advanced here by Fee Payers, stating:

> [W]e reject the ... argument that Section 2003 is merely a grandfather clause to preserve the labor contract between AFSCME that existed when PERA was enacted.... In our view, the ... argument impermissibly renders Section 2003 mere surplusage because ... Section 904 of PERA already accomplish[es] the Association's interpretation of Section 2003 by ... permitting contract provisions in existence [upon the passage of PERA], even if inconsistent with PERA, to remain in effect. Had the legislature intended merely to grandfather the existing collective bargaining agreement between the City and AFSCME, the legislature could have stopped with Section[ ] ... 904 and not included Section 2003.

667 A.2d at 462–63.

We also disagree with Fee Payers' assertion that, contra to the opinion of the trial court, the "fair share" agreement is a more compulsory form of union security than that contained in the 1961 CBA because certain employees incur *financial* obligations to the union that they would not have incurred under the 1961 CBA. The distinction between permissible and impermissible union security devices is not measured by whether additional employees are compelled to pay fees to the union, but by whether those fees which employees are compelled to pay are used to subsidize only the union's collective bargaining activities or are additionally used to fund activities of the union that are political and ideological in nature. *Abood*, 431 U.S. at 236–37, 97 S.Ct. at 1800–01; *see Hudson*, 475 U.S. at 303, 106 S.Ct. at 1074. Under the 1961 CBA between the City and Council 33, all existing members and new employees were required to be members of the union and thus were compelled to subsidize the political and ideological causes of the union, as well as its collective bargaining activities. Under the 1989 agreement, although all employees are required to pay fees to the union, the fees collected from nonmembers are used solely to help fund the collective bargaining activities of the union from which all employees, union and nonunion alike, benefit. As such, the 1989 "fair share" agreement is indeed a "less compulsory" form of union security device than that contained in the 1961 CBA because employees are not forced to pay for ideological and political union activities with which they disagree, in contravention of their First Amendment rights to free-

---

9. Under the original CBA, maintenance of union membership and hence the payment of union dues was only required for employees who were already members on the effective date of the 1961 agreement and did not resign within 30 days, or who were new hires, including those promoted, demoted or reinstated to the requisite employee category. Under the 1989 CBA, employees who are not members of the union are required to pay fees to the union to cover their proportionate share of the costs of collective bargaining as the benefits of the union's efforts in this regard inure to nonmembers and members alike.

dom of speech and association.[10]

*Zelem,* which Fee Payers cite as controlling, is inapposite to the matter presently at issue before this court. In that case, the Pennsylvania Supreme Court held in a four-to-three decision that Section 904 of PERA [11] did not allow the parties to a pre-PERA CBA, which contained a "modified agency shop" [12] clause requiring only new nonmembers to pay fees to the union, to execute a renewal contract containing a strict agency shop provision requiring all nonmembers to pay. *Zelem,* 459 Pa. at 404–05, 329 A.2d at 479–80. In so holding, the Court reasoned that Section 904 does not permit the inconsistent CBA provisions in existence when PERA was passed to be subsequently modified by the parties in any way. *Id.* The instant case, however, deals not with the general grandfather clause at issue in *Zelem,* but with Section 2003, which is substantially different in language and effect from Section 904. Unlike Section 904, which refers to specific provisions of CBAs in existence when PERA was passed, Section 2003 refers to the 1961 ordinance itself, which explicitly contemplates limited departure from the exact provisions of the sample agreement, including the union security clause contained therein. To be "saved" by Section 2003, any subsequent agreement between the City and Council 33 need only be substantially similar to the sample agreement provided; whereas the Court in *Zelem* found that Section 904 does not permit the inconsistent CBA provisions saved by that section to be subsequently modified by the parties in any way. As such, *Zelem* is not controlling in the matter presently at issue.

Finally, although Fee Payers refer to numerous rules of statutory construction, which they assert bolster their contention that the Board's interpretation of Section 2003 is erroneous, as this court has previously stated, "the language of Section 2003 is clear and unambiguous. We therefore must reject ... arguments relating to statutory construction." *Philadelphia Correctional Officers,* 667 A.2d at 463.

For the foregoing reasons, we conclude that the PLRB did not err in concluding that the 1961 ordinance gave the City and Council 33 some degree of flexibility to bargain over an acceptable form of union security, or in concluding that the 1989 "fair share" agreement reached between them was substantially consistent with the terms of the 1961 agreement and was saved from invalidation under PERA by Section 2003 thereof. As such, the "fair share" fees agreed upon by the City and Council 33 do not constitute an unfair labor practice under PERA, and the judgment of the trial court is accordingly affirmed.

LEADBETTER, J., dissents.

## ORDER

NOW, December 13, 1996, the order of the Court of Common Pleas of Philadelphia County, No. 1288, entered November 19, 1993, is affirmed.

---

**10.** This court recognizes that even the required payment of "fair share" fees impacts to some degree on an employee's First Amendment rights due to the nature of collective bargaining. *Hudson,* 475 U.S. at 302–03, 106 S.Ct. at 1073–74. However, such arrangements do not run afoul of the Constitution because procedural safeguards ensure that the infringement of those rights is minimized, and that affected employees have the opportunity to identify the impact of such agreements on their interests and to vindicate their rights via suit. *Id.* at 302–04, 106 S.Ct. at 1073–75.

**11.** This section is a general grandfather clause, which states, in pertinent part, as follows:

> Any provision of any collective bargaining agreement in existence [at the effective date of PERA] which is inconsistent with any provision of this act but not otherwise illegal shall continue valid until the expiration of such contract....

43 P.S. § 1101.904.

**12.** An "agency shop" agreement is the equivalent of a "fair share" fee agreement.