IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jane Ladley and Christopher Meier,    :
              Appellants    :
                       :   No. 158 C.D. 2019
              v.            :
                       :   Argued: December 11, 2019
Pennsylvania State Education    :
Association                :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE McCULLOUGH                      FILED: January 4, 2022


Jane Ladley and Christopher Meier (collectively, Teachers) filed a declaratory judgment action and civil rights case under 42 U.S.C. §1983 in the Court of Common Pleas of Lancaster County (trial court), challenging the constitutionality of the Pennsylvania State Education Association's (PSEA) collection of fair share fees and its implementation of the religious objector provisions of what is commonly known as the Pennsylvania Fair Share Law (Section 575).[2] Teachers' complaint requested a

---

[1] This case was assigned to the opinion writer before Judge Brobson succeeded Judge Leavitt as President Judge.

[2] *See* Section 2215 of the Act of April 9, 1929, P.L. 177, *as amended*, added by section 2 of the Act of July 13, 1988, P.L. 493, 71 P.S. §575(e)(2), (h) (hereinafter the statute is referred to in its

**(Footnote continued on next page…)**

declaration that Section 575(h) was unconstitutional both facially and as applied to Teachers, injunctive relief, and an award of attorney's fees and costs pursuant to 42 U.S.C. §1988. While the case was pending before the trial court, on June 27, 2018, the United States Supreme Court issued its decision in *Janus v. American Federation of State, County and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), wherein it overruled *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), as well as 40 years of precedent, and generally concluded that fair share agreements violate the First

entirety as "Section 575"). Under Section 575(a), a fair share fee is defined as "the regular membership dues required of members of the exclusive representative less the cost for the previous fiscal year of its activities or undertakings which were not reasonably employed to implement or effectuate the duties of the employe organization as exclusive representative." 71 P.S. §575(a). An "exclusive representative" is defined as the "employe organization selected by the employes of a public employer to represent them for purposes of collective bargaining." *Id.*

Section 575(b) states that "[i]f the provisions of a collective bargaining agreement so provide, each nonmember of a collective bargaining unit shall be required to pay to the exclusive representative a fair share fee." 71 P.S. §575(b). A nonmember is defined as an employee of a public employer who is a not a member of the exclusive representative, but who is represented in a collective bargaining unit by the exclusive representative for purposes of collective bargaining. 71 P.S. §575(a). In order to implement fair share agreements under Section 575(c), the exclusive representative provides the public employer "with the name of each nonmember who is obligated to pay a fair share fee, the amount of the fee that he or she is obligated to pay and a reasonable schedule for deducting said amount from the salary or wages of such nonmember." 71 P.S. §575(c). Thereafter, the public employer deducts the fair share fee "in accordance with said schedule and promptly transmit[s] the amount deducted to the exclusive representative." *Id.*

Section 575(e)(2) permits a nonmember to challenge the payment of fair share fees on bona fide religious grounds. 71 P.S. §575(e)(2). Where the exclusive representative accepts a nonmember's verification that the challenge to the fair share fee is based on bona fide religious grounds, the challenging nonmember may "pay the equivalent of the fair share fee to a nonreligious charity agreed upon by the nonmember and the exclusive representative." 71 P.S. §575(h). *See Zorica v. AFSCME District Council 33*, 686 A.2d 461, 462 n.1, 465 n.12 (Pa. Cmwlth. 1996), *abrogated on other grounds by Janus v. American Federation of State, County and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018) (explaining that a "fair share fee," which is the equivalent of an "agency shop fee" or "agency fee," is established by a fair share fee or agency shop agreement, by which an employer "deducts fees from the pay of employees who are represented by, but not members of, a union; these fees are transmitted to the union to pay nonmembers' proportionate share of the costs of collective bargaining; however, the fee does not include union expenses for political or ideological activities").

2

Amendment to the United States Constitution.[3]   On the day the Supreme Court announced *Janus*, PSEA contacted all affected employers and instructed them to immediately stop processing fair share fees. (Trial court op. at 8.) PSEA also sent letters to all nonmembers paying fair share fees to inform them that they were no longer required to pay fair share fees and that it had instructed employers to stop collecting them. *Id.* PSEA further refunded Teachers the fair share fees in dispute, plus interest. *Id.* at 6-7.

Subsequently, the parties filed cross-motions for summary judgment. By order dated October 29, 2018, the trial court denied Teachers' motion for summary judgment and granted PSEA's motion for summary judgment. In so doing, the trial court concluded that PSEA's voluntary cessation of fee collection rendered Teachers' case moot and dismissed it on that basis. However, the trial court noted that Teachers had brought their claims under 42 U.S.C. §1983, sought to have the court award them attorney's fees and costs incurred in the suit, and invited Teachers to file a motion for attorney's fees and costs on the ground that they were "prevailing parties" under 42 U.S.C. §1988.[4] Ultimately, the issue of attorney's fees and costs remained outstanding at the time Teachers filed their appeal to this Court.

For the reasons that follow, we reverse and remand to the trial court for further proceedings consistent with this opinion.

---

[3] U.S. Const. amend. I.

[4] Under 42 U.S.C. §1988, "[i]n any action or proceeding to enforce . . . [42 U.S.C. §1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988.

## Facts and Procedural History

The relevant facts and procedural history are primarily garnered from the trial court opinion. Jane Ladley was a public school teacher in the Avon Grove School District for 17 years. (Trial court op. at 4.) Although Ms. Ladley was not a union member, the Avon Grove Education Association (AGEA), an affiliate of PSEA, was Ms. Ladley's exclusive representative for collective bargaining. In 2013, AGEA and the Avon Grove School District entered into an agency shop agreement that required Ms. Ladley to pay an annual "fair share fee" of approximately $435.14 for expenses related to collective bargaining. *Id.* In December 2013, PSEA notified Ms. Ladley that she, as a union nonmember, would have to pay a fair share fee as a condition of her employment. *Id.* at 5.

In January 2014, Ms. Ladley notified PSEA that she objected to the payment of fair share fees on bona fide religious grounds. PSEA accepted Ms. Ladley's claim of a religious objection and asked her to designate a charity to receive her fair share fee. *Id.* Thereafter, Ms. Ladley requested that her fair share fee be paid to the Coalition for Advancing Freedom's (CFAF) "Sustainable Freedom Scholarship." *Id.* However, PSEA rejected Ms. Ladley's designated charity on the grounds that CFAF was both a political organization and a religious charity. *Id.* Ms. Ladley then notified PSEA that she had chosen an alternative charity, the Constitutional Organization of Liberty (COOL), to be the recipient of her fair share fee. PSEA also rejected COOL on the ground that it was a "partisan organization." *Id.*

Christopher Meier was also a public school teacher and worked for the Penn Manor School District. *Id.* at 6. Although Mr. Meier was not a union member, the Penn Manor Education Association (PMEA), which is also an affiliate of PSEA, was Mr. Meier's exclusive representative for collective bargaining. In 2012, PMEA

4

and Penn Manor School District entered into an agency shop agreement that required Mr. Meier to pay an annual fair share fee of approximately $435.14. *Id.* In December 2012, PSEA informed Mr. Meier that he would have to pay the fair share fee.

Mr. Meier notified PSEA that he objected to the payment of a fair share fee on bona fide religious grounds and selected the National Right to Work Legal Defense Foundation (NRWLDF) as the charity to receive his fair share fee. *Id.* In July 2014, PSEA accepted that Mr. Meier's objection was religious, but rejected the NRWLDF as an acceptable charity to receive his fair share fee on the ground that there was a fundamental conflict of interest between it and the NRWLDF, as the NRWLDF had previously sued PSEA. *Id.* at 7.

In September 2014, Teachers commenced their civil action via a complaint in the trial court. Thereafter, the PSEA and Teachers filed a series of amended complaints and preliminary objections, respectively. In the meantime, in July 2016, PSEA adopted new procedures for handling disputes where a bona fide religious objector and a union cannot agree on a charitable organization to which to donate the fair share fee. (Trial court op. at 7.) The new procedures provided that PSEA would approve a religious objector's choice of a nonreligious charity, but only if "[t]he charity [did] not advance policies inconsistent with PSEA or [the National Education Association's (NEA)] constitution and bylaws, resolutions, or policies." *Id.* at 7-8. Instead of implementing an administrative framework to agree upon a nonreligious charity by the nonmember and the exclusive representative, PSEA's policy directed where the payment would go. *Id.* at 8.

The new procedures also provided a binding arbitration requirement to determine what charity would receive the fair share fee where a dispute regarding the charity existed. (Reproduced Record (R.R.) at 108a.) In particular, the procedure

5

mandated that PSEA would provide arbitration, if requested, "on the issue of which charity should receive the equivalent of the fair share fee," that arbitration would be final and binding, and that if the religious objectors did not wish to arbitrate or did not make a timely request, PSEA would send religious objectors' funds to a nonreligious charity chosen by PSEA in its sole discretion. (R.R. at 109a.)

On June 30, 2017, Teachers filed a motion for summary judgment with the trial court, to which PSEA filed an answer and cross-motion for summary judgment. After it became clear that the United States Supreme Court had granted *certiorari* in *Janus*, 138 S. Ct. 2448, the parties filed a joint motion to stay proceedings until the Supreme Court decided that case. The parties alleged that the Supreme Court's ruling in *Janus* was "nearly certain to impact the disposition of th[e] matter." (R.R. at 1127a.) The trial court stayed the instant case on October 11, 2017. After *Janus* was decided, the trial court lifted the stay on July 31, 2018.

Thereafter, PSEA withdrew its cross-motion for summary judgment and filed a renewed cross-motion for summary judgment, asserting that the case was now moot based on *Janus*. Teachers filed a response to PSEA's renewed cross-motion for summary judgment. Whereas PSEA argued that, due to *Janus*, Teachers' as-applied challenges were now moot, Teachers argued that the case was not moot because *Janus* had not yet been applied to the laws of Pennsylvania and PSEA's voluntary change in policy was not an adequate safeguard to prevent repetition or ensure that PSEA would not seek to collect fair share fees in the future. Teachers also argued that, regardless of whether the matter was moot, because First Amendment protections were at issue the court could decide the case based on the public interest exception to the mootness doctrine.

6

On October 29, 2018, the trial court granted PSEA's renewed cross-motion for summary judgment and denied Teachers' motion for summary judgment on the grounds that the dispute was moot. In its opinion, the trial court recognized that *Janus* was a "sea change" in the law.[5] The trial court explained that *Janus* held that

---

[5] As an overview of the *Abood* and *Janus* decisions, in *Abood*, the Detroit Federation of Teachers (Federation) was certified as the exclusive bargaining representative for teachers employed by the Detroit Board of Education (Board). 431 U.S. at 211. The collective bargaining agreement (CBA) between the Board and the Federation did not obligate teachers to join the Federation, but included an "agency shop clause" that required every teacher who did not become a member of the Federation to pay a union service charge equal to the regular dues required of Federation members. *Id.* The agency shop fee not only paid for the Federation's collective bargaining activities, but also a variety of activities and programs which were economic, political, and religious in nature. *Id.* Abood, a teacher who opted to not join the Federation, brought a challenge to the agency shop fee, requesting that it be declared invalid under the First and Fourteenth Amendments to the United States Constitution, U.S. Const. amends. I, XIV. *Id.* at 213.

On appeal, the Supreme Court held that the agency shop fee was constitutional insofar as it was "used to finance expenditures by the [Federation] for the purposes of collective bargaining, contract administration, and grievance adjustment." *Id.* at 225. However, the Court also held that the First Amendment prohibited the Federation from requiring nonmember teachers to "contribute to the support of an ideological cause [they] oppose[d] as a condition of holding a job as a public school teacher." *Id.* at 235. Although the Court determined a union was not constitutionally precluded from spending "funds for the expression of political views, on behalf of political candidates, or toward the advancement of other ideological causes not germane to its duties as collective[]bargaining representative," it held that the Constitution requires that "such expenditures be financed from charges, dues, or assessments paid by employees who do not object to advancing those ideas and who are not coerced into doing so against their will by the threat of loss of governmental employment." *Id.* at 236. In sum, while *Abood* concluded that a nonmember cannot be compelled to contribute to a union's political activities, it upheld the constitutionality of agency shop fees that require nonmembers to contribute to the costs related to collective bargaining and other union activities that benefit nonmember employees. *Id.* at 225, 236.

Forty years later, the Supreme Court revisited the constitutionality of agency shop fees in *Janus*. There, Janus, a child support specialist employed by the Illinois Department of Healthcare and Family Services, refused to join the union that represented his bargaining unit, the American Federation of State, County, and Municipal Employees, Council 31 (AFSCME), because he opposed many of the public policy positions it advocated, including its positions in collective bargaining, and believed AFSCME's behavior contributed to Illinois' fiscal crises and did not reflect the interests of Illinois citizens. *Janus*, 138 S. Ct. at 2461. However, pursuant to an Illinois statute, Janus was required to pay AFSCME an agency shop fee, which paid for the cost of collective bargaining and

**(Footnote continued on next page…)**

"'States and public sector unions may no longer extract agency fees from nonconsenting employees'" and that "'[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay.'" (Trial court op. at 13 (quoting *Janus*, 138 S. Ct. at 2486).)  While the trial court noted that *Janus* did not address or comment on Pennsylvania laws regarding public sector unions, it also recognized that the Supreme Court held that its decision would prohibit "[s]tates and public sector unions . . . [from] extract[ing] agency fees from nonconsenting employees." (Trial court op. at 13 (quoting *Janus*, 138 S. Ct. at 2459).)

On the mootness issue, the trial court noted that in the wake of *Janus*, PSEA had provided (1) a sworn affidavit from Joseph Howlett, its Assistant Executive Director for Administrative Services, outlining the steps PSEA had taken to cease fair share fee collection; (2) directives to local associations to stop such collections; and (3) proof that Teachers had been reimbursed their fees with interest.  (Trial court op. at

---

other supposedly connected activities, including lobbying, social and recreational activities, litigation, advertising, and membership meetings and conventions.  *Id.*  The total chargeable amount of the agency shop fee for nonmembers was 78.06% of full union dues.  *Id.*  Janus brought a complaint claiming that all nonmember fee deductions are coerced political speech and that the First Amendment forbids coercing any money from nonmembers.  *Id.*

The Supreme Court concluded that under the First Amendment, the government may not require all employees to support a union "irrespective of whether they share its views."  *Id.* at 2478. It determined that "public-sector agency-shop requirements violate the First Amendment, and *Abood* erred in concluding otherwise."  *Janus*, 138 S. Ct. at 2478.  Thus, the Court held that "States and public-sector unions may no longer extract agency fees from nonconsenting employees."  *Id.* at 2486.

The Court noted that pursuant to the Illinois statute at issue, "if a public-sector [CBA] includes an agency-fee provision and the union certifies to the employer the amount of the fee, that amount is deducted from the nonmember's wages.  No form of employee consent is required."  *Id.* (citation omitted).  The Court held that "[t]his procedure violates the First Amendment and cannot continue. Neither an agency fee nor any payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay."  *Id.*  Accordingly, the Court held that *Abood* was wrongly decided and overruled its earlier decision.  *Id.*

8

17.)  The trial court also observed that PSEA had advised all nonmember employees that it could no longer collect fair share fees and that the Pennsylvania Department of Labor and Industry (Department) had released a guidance statement on the impact of *Janus*, which instructed public employers to stop collecting fair share fees from union nonmembers.  (Trial court op. at 18.)  In sum, the trial court held that although *Janus* did not automatically render the legal issue moot, PSEA's actions in ceasing to collect fair share fees, refunding previously collected fees, and preventing the future collection of fees had created a change in facts sufficient to moot the case.  (Trial court op. at 24.)  Because Teachers could not reasonably expect that PSEA would resume collection of fair share fees, the trial court concluded that no exception to the mootness doctrine applied.  *Id.*

However, and importantly, the trial court, in its order and subsequent opinion, instructed Teachers to file a motion for attorney's fees if they believed they were the prevailing parties pursuant to 42 U.S.C. §1988.  Specifically, the trial court stated:

> [Teachers] brought their claims under 42 U.S.C. [§]1983, and seek to have the court award them attorney's fees and costs incurred in this suit.  If plaintiffs believe they are the "prevailing parties" as defined in 42 U.S.C. [§]1988, they shall file a motion with supporting documentation by **November 23, 2018**.  Any opposition to the motion shall be filed by **December 7, 2018**, and any reply shall be filed by **December 14, 2018**.

(Trial court op. at 24 (emphasis added).)

Because the trial court entered its order on October 29, 2018, and there is a 30-day deadline in which to file an appeal from that order, the final day to file a notice

9

of appeal to this Court was **November 28, 2018**. On that due date, Teachers filed a timely appeal from the trial court's order.[6]

## Discussion

On appeal, Teachers contend that the trial court erred when it concluded that Teachers' claims were moot.[7] In a somewhat related argument, Teachers maintain a live case or controversy exists because the issue of attorney's fees is outstanding. According to Teachers, considerations as to mootness should be disregarded when "the question of attorney's fees still remains," noting that "the issue of attorney's fees" arose "for a case initiated in 2014 and perpetuated in part because of PSEA's conduct," and

---

[6] In reviewing a grant or denial of summary judgment, this Court may only disturb the order of the trial court where there has been an error of law or a clear or manifest abuse of discretion. *Albright v. Abington Memorial Hospital*, 696 A.2d 1159, 1165 (Pa. 1997). Nevertheless, our scope of review is plenary and we apply the same standard for summary judgment as the trial court. *Id.* "Granting of summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted.) Moreover, "[t]he record is to be viewed in the light most favorable to the nonmoving party, and all doubts as to the presence of a genuine issue of material fact must be resolved against the moving party." *Id.*

[7] Teachers maintain that no court has yet applied *Janus* to Pennsylvania law. They contend that Section 575 is still "on the books" in Pennsylvania and that PSEA insists on keeping fair share fee provisions in Mr. Meier's CBA. (Teachers' Br. at 19.) Teachers assert that a case is not moot where litigants still have a stake in the outcome of a case or where the court will be able to grant effective relief. They insist that, because the Supreme Court did not strike down Pennsylvania law when it decided *Janus*, Teachers still have a stake in the outcome of the case and the trial court could have granted them effective relief. They also argue that the trial court could have granted them effective relief by invalidating the fair share fee provision in Mr. Meier's CBA or enjoining PSEA from enforcing the provision. Teachers note that PSEA did not demonstrate that it amended the relevant CBAs to remove the fair share fee provisions. Finally, Teachers assert that even if this case is technically moot, the trial court's dismissal should be reversed because this case involves First Amendment claims and, thus, falls under the "great public importance" exception to the mootness doctrine.

10

"has yet to be resolved." (Teachers' Br. at 19.) Teachers assert that the trial court never decided the merits of their claims and that, "[h]ad the trial court ruled for [them] on any portion of the merits, they would have been entitled to the attorney's fees they sought under 42 U.S.C. §1988." *Id.* at 23.

Here, in their complaint, Teachers requested attorney's fees pursuant to 42 U.S.C. §1988. The trial court in this matter, when granting summary judgment in favor of PSEA on October 29, 2018, realized Teachers' request and retained jurisdiction to resolve the issue of whether Teachers were entitled to attorney's fees under 42 U.S.C. §1988. As noted above, this statutory section grants a court discretion to award such a fee to a "prevailing party." *Id.* However, the trial court directed Teachers to file a separate motion with supporting documentation by November 23, 2018, PSEA to file a motion in opposition by December 7, 2018, and Teachers to file a reply by December 14, 2018. Consequently, the trial court's briefing schedule extended the case beyond the 30-day time limit for Teachers to file an appeal from its final order entered on October 29, 2018. Teachers, seemingly concerned that they may lose their appeal rights if they chose to file a motion for attorney's fees, decided not to do so. Nonetheless, the trial court expressly reserved jurisdiction to determine the issue of attorney's fees and the issue of attorney's fees remains outstanding and in need of resolution by the trial court.

In analyzing a case that contained similar procedural circumstances, the Supreme Court of Florida explained:

> [W]hen the [] court entered [a] final judgment, the court reserved jurisdiction to entertain a motion for attorney['s] fees and costs. This reservation of jurisdiction allowed the [] court to consider further proceedings on the issue of attorney fees . . . . We find that a reservation of jurisdiction in a final judgment is procedurally an enlargement of time [that] may allow a party to file late a motion for attorney['s] fees. Any

11

> other interpretation would make the trial court's reservation in the final judgment not only a nullity but a procedural trap.

*Gulliver Academy, Inc. v. Bodek*, 694 So.2d 675, 677 (Fla. 1997). Stated succinctly, even though a trial court may enter a final order or judgment in a case, "[i]t has been held that an express reservation of rights [in that order] as to litigation on a certain item preserves that subject for future adjudication." *Coleman's Service Center, Inc. v. Federal Deposit Insurance Corp.*, 935 S.W.2d 289, 300 (Ark. App. Ct. 1996). Or, in other words, there is an exception to the rule regarding the finality of a judgment when "a judgment [] contain[s] an express reservation of jurisdiction authorizing the court to subsequently modify it." *In re Marriage of Thorne & Raccina*, 203 Cal. App. 4th 492, 500 (Cal. Ct. App., 6th Dist., 2012).

Moreover, in general, a plaintiff's claim becomes moot at the time the plaintiff no longer has "a legally cognizable interest in the outcome"—that is, when the plaintiff does not have a personal stake in the claim. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396 (1980) (internal quotation omitted). Albeit in the context of class action litigation, courts have held that a plaintiff has a "continuing interest in the litigation" when the plaintiff "retains an interest in . . . attorney fees," *Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823, 827 (8th Cir. 2008), and our Supreme Court has instructed that a case is not moot when "the question of attorney fees still remains." *Giant Eagle Markets v. United Food and Commercial Workers Union, Local Union No. 23*, 652 A.2d 1286, 1291 (Pa. 1995).

In *Baker and Hostetler, LLP v. Swearingen*, 998 So.2d 1158 (Fla. Ct. App. 2008), a Florida appeals court determined whether a court was precluded from deciding a wife's motion for attorney's fees "where the court ha[d] reserved jurisdiction in a final judgment dissolving a marriage to determine a party's entitlement to, and the amount of, attorney's fees, costs and suit monies." *Id.* at 1159. Although the court

12

determined that it lacked jurisdiction to decide the issue of attorney's fees, the appeals court concluded otherwise, reasoning that "the court retained full control over the issue of attorney's fees for the [w]ife." *Id.* In so deciding, the appeals court noted that "[t]he effect of the reservation of jurisdiction over both [the] entitlement and amount [of attorney's fees] is that the matter of fees had not been finalized," and, because "the [] court had not yet taken up the issue of attorney's fees and had reserved its jurisdiction to do exactly that," the appeals court remanded with instructions that the court below decide the issue of attorney's fees. *Id.* at 1163.

Notably, a court has broad discretion to award attorney's fees under 42 U.S.C. §1988. *See Hopwood v. Texas*, 236 F.3d 256, 277 (5th Cir. 2000). In evaluating whether a court abused its discretion to award attorney's fees, an appeals court reviews the factual findings supporting the grant or denial of attorney's fees for clear error and the conclusions of law underlying the award *de novo*. *Energy Management Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006). Further, while "[p]laintiffs as prevailing parties [under 42 U.S.C. §1988] ordinarily should recover an attorney's fee," a court may deny an award of fees if "special circumstances would render such an award unjust." *Romain v. Walters*, 856 F.3d 402, 407 (5th Cir. 2017). However, in the absence of special circumstances, a court must award fees to the prevailing plaintiff. *Id.* at 407-08. Given this legal framework, it is commonly understood that, generally speaking, "[a]bsent findings in the record, an appellate court has no means to review a court's exercise of discretion to award attorney's fees." *Christian v. Maternal-Fetal Medicine Associates of Maryland, LLC*, 183 A.3d 762, 781 (Md. Ct. App. 2018).

In this case, the trial court expressly reserved jurisdiction to decide the issue of whether Teachers were entitled to attorney's fees as a "prevailing party" under 42 U.S.C. §1988, despite its dismissal of the case on the basis that it was rendered moot

during the pendency of the action. Having done so, the trial court acknowledged that the issue of attorney's fees remained outstanding and, being the factfinder in such matters, the trial court should be afforded the opportunity to adjudicate this issue in the first instance because the net result is that, regardless of the trial court's dismissal of the case on mootness grounds, the issue of attorney's fees, in and of itself, presents a live controversy that needs to be resolved. Ultimately, if the trial court was provided with the opportunity to address this issue on remand, the trial court's disposition of Teachers' request for attorney's fees would, by itself, result in an order that would be reviewable in a subsequent appeal and, also, would effectively un-moot this case. *See In re Danny R. Brown* (Bankr. D. Idaho, No. 08-40638-JDP, filed April 21, 2009) (unreported), slip op. at 1 ("But whether the case is ultimately dismissed or not, the Sanction Motion will not be rendered moot. Its subject matter is independent of dismissal, and the Court expressly reserved jurisdiction over the Sanction Motion in its ruling on dismissal."); *cf. Crest One Spa v. TPG Troy, LLC (In re TPG Troy, LLC)*, 793 F.3d 228, 232 (2d Cir. 2015) ("[O]ther Circuits hold that a money judgment for attorney's fees and costs provides the court with a live controversy capable of review even if the underlying issues raised by the appeal are moot."); *C & H Nationwide, Inc. v. Norwest Bank Texas NA*, 208 F.3d 490, 494 (5th Cir. 2000) ("[W]e can reach a now-moot substantive issue when necessary to determine whether the district court correctly awarded attorney's fees under state law.").

Naturally, in determining whether Teachers were a "prevailing party" for purposes of attorney's fees and costs under 42 U.S.C. §1988, the trial court would have to examine the merits of Teachers' underlying constitutional claims and/or the impact that the likelihood of success of such a claim had on PSEA and its decision to voluntarily discontinue collecting fair share fees. After the trial court makes that ruling,

in the event of a subsequent appeal to this Court, our appellate review would entail a *de novo* evaluation of the trial court's conclusions of law underlying its decision to grant or deny attorney's fees. Therefore, this Court remands for the trial court to decide the issue of attorney's fees and, in conjunction therewith, to render a determination regarding the merits of the Teachers' constitutional claim.

## Conclusion

For the above-stated reasons, we reverse the trial court's order and remand to the trial court for further proceedings consistent with this opinion. On remand, the trial court shall address the merits of Teachers' constitutional claims in deciding whether Teachers are a "prevailing party" pursuant to 42 U.S.C. §1988 and, if so, whether they are entitled to reasonable attorney's fees and costs in this action.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Cohn Jubelirer concurred in the result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jane Ladley and Christopher Meier,     :
               Appellants     :
                               :    No. 158 C.D. 2019
             v.           :
                               :
Pennsylvania State Education       :
Association                      :

## ***ORDER***

AND NOW, this 4th day of January, 2022, the October 29, 2018 order of the Court of Common Pleas of Lancaster County (trial court) is REVERSED and the matter is REMANDED to the trial court. On remand, the trial court shall determine whether Jane Ladley and Christopher Meier (Teachers) are the prevailing party pursuant to 42 U.S.C. §1988 and, if so, whether they are entitled to reasonable attorney's fees and costs in this action. In making this determination, the trial court shall render a decision with regard to the merits of Teachers' constitutional claims and enter an appropriate order reflecting its findings of fact and conclusions of law.

The Application for Leave to File Post-Submission Communication filed by the Pennsylvania State Education Association (PSEA) on January 23, 2020, namely to provide the Court with additional legal authority pursuant to Pa.R.A.P. 2501(a), is hereby GRANTED.

The Application for Leave to File Post-Submission Communication filed by PSEA on June 25, 2020, namely to provide the Court with supplemental legal authority pursuant to Pa.R.A.P. 2501(a), is hereby GRANTED.

Jurisdiction relinquished.


_____
PATRICIA A. McCULLOUGH, Judge