**Joseph W. GATTI, Sr. and Lena E. Gatti, his wife, Plaintiffs,**

v.

**NATIONAL BANK OF THE COMMONWEALTH, E. James Trimarchi, David R. Tomb, Jr., Patrick F. McCarthy, Roy R. Fairman, Johnston A. Glass, Jeffrey A. Martin, and William H. Jones, Defendants.**

Civ. A. No. 88–0195.

United States District Court, W.D. Pennsylvania.

Sept. 16, 1988.

---

**3.** The recording would be lawful under federal law. 18 U.S.C. § 2510 *et seq.*

Michael E. Hoover, Sheinberg & Hoover, Pittsburgh, Pa., for plaintiffs.

Eric A. Schaffer, Reed Smith Shaw & McClay, Pittsburgh, Pa., for defendants.

## OPINION

GERALD J. WEBER, District Judge.

Plaintiffs' son and daughter-in-law owned and operated a hardware store. Defendant Bank made several loans to the business over the years. In supporting their offspring, plaintiffs executed Guaranty and Suretyship Agreements on some of these loans. When the son and his wife defaulted on the loans, the bank turned to plaintiffs for payment.

Plaintiffs filed this suit against the bank and a number of its officers, alleging that defendants had conspired to defraud plaintiffs by inducing plaintiffs to execute the guarantees while withholding critical financial information about the son's business. Plaintiffs have asserted three styles of RICO claims: Count I—§ 1962(d), Count II—§ 1962(a), and Count III—§ 1961(1)(D). Plaintiffs also seek to hold the bank liable on a respondeat superior theory (Count IV), obtain punitive damages (Count V), and establish a violation of the Pennsylvania Loan Laws, 41 Pa.Stat.Ann. § 504, (Count VI). Defendants have now moved to dismiss Counts III and VI.

### 1. RICO—§ 1961(1)(D)

In Count III plaintiffs allege a RICO violation premised on violations of Pennsylvania Securities Laws. However, defendants argue that RICO claims under § 1961(1)(D) are limited to claims premised on violation of Federal statutes.

Section 1961(1)(D) reads:

"Racketeering activity" means ... (D) any offense involving fraud connected with a case under title 11 [bankruptcy], fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealing, buying selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States.

The question here is whether the clause "punishable under any law of the United States" modifies only the immediately preceding clause concerning narcotics offenses, or does it also apply to the earlier clauses concerning bankruptcy fraud and securities fraud? In short, to state a claim must plaintiff allege a "fraud in the sale of securities ... punishable under any law of the United States"?

We have not been directed to any published opinions which address this question and we have found none. To our mind, a plain reading of this section indicates that to establish a § 1961(1)(D) claim the underlying offense must be one punishable by federal laws. In this regard the placement of the comma immediately preceding the modifying phrase, and the fact that the three enumerated sources of underlying offenses are each the subject of extensive federal statutory schemes, buttress our reading of this section. Also, we note that several courts appear to have adopted this reading of the statute although not deciding the question explicitly. E.g. *Trane Co. v. O'Conner Securities*, 718 F.2d 26, 29 (2d Cir.1983); *Sedima v. Imrex Co.*, 473 U.S. 479, 481–2, 105 S.Ct. 3275, 3277, 87 L.Ed.2d 346 (1985).

Simply put, we conclude that to state a claim under § 1961(1)(D) the underlying securities offense must be one punishable by federal law. Plaintiffs' claim is predicated solely on alleged violations of Pennsylvania Securities Laws. Therefore, Count III of plaintiffs' Complaint will be dismissed.[1]

### 2. Count VI—Pennsylvania Loan Law

In Count VI, plaintiffs allege that defendants failed to comply with the disclosure requirements of Pennsylvania's Loan Law, 41 Pa.Stat.Ann. § 101 *et seq.* De-

---

1. Because we have dismissed Count III on the grounds described above, we need not address defendants' challenge to the sufficiency of the allegations of Pennsylvania Securities Law violations.

fendants contend that the statute requires disclosure only on residential mortgages. Because plaintiffs in this case entered a Guaranty Agreement on a business loan to a third party and no lien was created on residential property, defendants contend that this is not a residential mortgage within the meaning of the statute and therefore the disclosure requirements do not apply.

"Residential mortgage" as defined by the Act at all times relevant here is:

> ... an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand ($50,000) or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units or on which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium unit.

41 Pa.Stat.Ann. § 101. The facts as alleged in the Complaint do not appear to satisfy the plain meaning of either "residential mortgage" or "security document" as those terms are defined and employed in the statute or as they are commonly understood. The Guaranty Agreement created no lien, though by a Confession of Judgment it provided for the prospect of the future creation of a lien in the event of a default.

Our sense of this provision is countered by the Opinion in *First National Bank of Pennsylvania v. Flanagan*, 515 Pa. 263, 528 A.2d 134 (1987). There the Supreme Court gives a much more expansive reading of the term "residential mortgage", a reading broad enough to encompass the facts as alleged by plaintiffs in the case at bar. However, the Court's interpretation of the statute was unnecessary to the resolution of the issue before it and therefore appears to be wholly dictum.[2] As dictum it is not binding upon us and we believe that, if presented with the issue in the context of this case the Court would conclude that the disclosure requirements of 41 Pa.Stat.Ann. § 401 do not apply. See also, Statement of Policy by Secretary of Banking, 18 Pa.Bull. No. 8, at 779 (Feb. 20, 1988).

However, even if we were to be bound by the Court's determination in *Flanagan*, it appears that the holding espoused there would not be entitled to retroactive application. As we have described above, the holding in *Flanagan* is an expansive interpretation of the term "residential mortgage", including within its aegis many commercial arrangements not ordinarily viewed as such. Indeed the Pennsylvania Secretary of Banking has indicated that the *Flanagan* interpretation is contrary to the understanding of banks and of the Commonwealth Department responsible for administering the statute. Finally, the only reported decision on the issue prior to *Flanagan* would appear to support the more restrictive view of the statute's definition. See, *Mellon Bank, N.A. v. Simpson*, 2 Pa. D & C 3d 486 (1976). In this situation, because the *Flanagan* holding, if binding, would be an apparent departure from previous interpretation and understanding of the statute, and because application of this new, expansive interpretation may jeopardize the interests of parties who relied on the earlier, more restrictive reading, the holding in *Flanagan* cannot be applied retroactively. *Ettinger v. Central Penn National Bank*, 634 F.2d 120 (3d Cir.1980). Count VI will therefore be dismissed.

## CONCLUSION

For the reasons stated, Counts III and VI of plaintiffs' Complaint will be dismissed with prejudice.

---

**2.** No pun intended.