**CITY COUNCIL OF PHILADELPHIA, for itself and On behalf of the City of Philadelphia and Bondholders of Philadelphia Gas Works Revenue Bonds issued by the City of Philadelphia and David Cohen, Marian Tasco and Angel Ortiz, individual members of the Philadelphia City Council and resident voters of Philadelphia and Customers of the Philadelphia Gas Works and Marian Tasco, as Chairperson of the Philadelphia Gas Commission, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania and Pennsylvania Public Utility Commission, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2000.

Decided Sept. 12, 2002.

---

Charles W. Bowser, Philadelphia, for petitioners.

Stanley E. Brown, Harrisburg, for respondents.

Philip A. Bertocci, Philadelphia, for intervenors, Action Alliance of Senior Citizens.

Daniel J. Doyle, Harrisburg, for intervenor, Commonwealth of PA.

Before: DOYLE, Senior Judge,[1] COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, KELLEY, Senior Judge, and FLAHERTY, Senior Judge.

---

1. *This case was assigned prior to the date when President Judge Doyle and Judge Kelley assumed the status of senior judge on January* 1, 2002, and when Judge Flaherty assumed the status of senior judge on December 24, 2000.

OPINION BY Senior Judge DOYLE.

We are asked to determine the preliminary objections filed by the Commonwealth of Pennsylvania and the Pennsylvania Public Utility Commission (Commonwealth) in response to a petition for review filed by the City Council of Philadelphia, *et al.* (City) in our original jurisdiction, which seeks to have the Natural Gas Choice and Competition Act, 66 Pa.C.S. §§ 2201–2212 (Act 21), declared unconstitutional and/or subject to the provisions of the Philadelphia Home Rule Charter and the First Class City Revenue Bond Act.[2] The City also sought an injunction blocking implementation of Act 21, which was denied.

The petition for review was filed on behalf of the City Council of Philadelphia and certain of its members. One of the petitioners, Marian Tasco, is the chair of the Philadelphia Gas Commission as well as a member of City Council. The petition purports to bring the action on behalf of the Gas Commission's customers, vendors, bondholders and other contractors as well. We granted permission to intervene to several parties on behalf of the Commonwealth and on behalf of the City.[3] The petition, entitled Petition for Review in the Nature of a Complaint in Equity and for Declaratory Relief, seeks to resolve what the City characterizes as an impermissible conflict between Act 21 and Philadelphia's Home Rule Charter and the First Class City Revenue Bond Act.

The City of Philadelphia supplies natural gas to residential and commercial customers within the city through the Philadelphia Gas Works (PGW). PGW is owned by the City of Philadelphia and controlled by the Philadelphia Gas Commission. The Philadelphia Facilities Management Corporation (PFMC), a private, nonprofit corporation, manages the day-to-day operation of PGW. On June 16, 1999, the Pennsylvania General Assembly passed House Bill 1331 as Act No. 21 of 1999. Act 21 was signed into law by then-Governor Tom Ridge on June 22, 1999, and became effective on June 30, 2000. One of the provisions of Act 21 was the abolition of the Philadelphia Gas Commission and the assumption of its duties by the Pennsylvania Public Utility Commission (PUC).

In **count one** of its petition, the City asks for a declaratory judgment declaring Act 21 to be unconstitutional because it will "infringe on powers and duties of the City of Philadelphia and the Philadelphia Gas Commission in violation of the Home Rule provisions of Art. IX Sec. 2 of the Constitution of Pennsylvania." (Petition for Review, para. 27, at 7). Act 21 will do this, the City asserts, by its unconstitutional repeal of Sections 3–100(f), 3–909 and 5–902 of the Philadelphia Home Rule Charter, 351 Pa.Code §§ 3.3–100(f), 3.3–909, 5.5–902. Section 3–100(f) creates the Philadelphia Gas Commission, Section 3–909 establishes the method of appointing members of the Gas Commission and Section 5–902 empowers the Gas Commission to act pursuant to contracts and ordinances. Additionally, the City alleges the First Class Revenue Bond Act supercedes Act 21 and that Act 21 is unconstitutionally vague because it does not specifically repeal all of the laws that it supercedes. In **count two** of its petition, the City alleges that Act 21

**2.** Act of October 18, 1972, P.L. 955, *as amended,* 53 P.S §§ 15901–15924.

**3.** Intervenors in support of the City include the following: Action Alliance of Senior Citizens of Greater Philadelphia, Consumers Education Protective Association, Association of Community Organizations for Reform Now and Leray Williamson. The Intervenor in support of the Commonwealth is the Apartment Association of Greater Philadelphia.

will unlawfully impair certain contracts, specifically, its contract with PFMC and, by doing so, impair its obligations in regard to revenue bonds that have been issued and in regard to customer service agreements that are currently in place. **Count three** of the petition prays for expedited injunctive relief (preliminary injunction), which we have already denied by an order of this Court entered on June 28, 2000.

■ The Commonwealth preliminarily objects to the petition on the grounds that the City has failed to state the existence of a ripe controversy and demurs to the petition on the grounds that acts of the General Assembly clearly supercede any provision of a home rule charter and that there is no legal basis for the City's claim that any contracts will be impaired.[4]

The issues presented are (1) whether there is a current case or controversy between the City or the Intervenors and the Commonwealth; (2) whether Philadelphia's Home Rule Charter is subordinate to the authority of the General Assembly of Pennsylvania, and; (3) whether Act 21 impermissibly impairs any contract rights of the City or the Intervenors.[5]

■ The Commonwealth first objects to the petition on the grounds that the City has failed to state the existence of a ripe controversy. It is well established that "[d]eclaratory judgments are not obtainable as a matter of right. Rather, whether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion." *Pa. State Lodge v. Department of Labor & Indus.*, 692 A.2d 609, 613 (Pa.Cmwlth.1997) (citation omitted). A substantial limitation on the exercise of such jurisdiction is the principle that we will not adjudicate a petition for declaratory judgment where the issues are not ripe for determination.[6] In deciding whether the doctrine of ripeness bars our consideration of a declaratory judgment action, both the state and federal courts employ a two-part test: "[t]he court must consider whether the issues are adequately developed for judicial review and what hardship the parties will suffer if review is delayed." *Treski v. Kemper Nat'l Ins. Cos.*, 449 Pa.Super. 620, 674 A.2d 1106, 1113 (1996) (citing *Rouse &*

---

**4.** A demurrer may only be sustained when on the face of the complaint the law will not permit recovery. All well-pleaded allegations must be accepted as true. *Stone & Edwards Insurance Agency, Inc. v. Department of Insurance*, 151 Pa.Cmwlth. 266, 616 A.2d 1060 (1992).

**5.** As the brief submitted by Intervenors on behalf of the City mirrors the City's arguments, our opinion, though not referring to them, should be read as addressing their concerns as well. Intervenor on behalf of the Commonwealth has not submitted a brief on these preliminary objections. Further, City Intervenors' application to file an amended petition for review adding a fourth count was denied by an order of this Court entered on March 27, 2000.

**6.** It is not altogether clear whether the ripeness doctrine represents a prudent limitation or a jurisdictional bar. Although the weighing of factors and the nature of the factors to be weighed to determine the ripeness issue would seem to militate in favor of the former view, our Court has held to the contrary. *Brown v. Liquor Control Bd.*, 673 A.2d 21 (Pa.Cmwlth.1996); *see also Pa. Dental Hygienists' Ass'n v. Board of Dentistry*, 672 A.2d 414 (Pa.Cmwlth.1996). The federal courts have noted a similar ambiguity. *See Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 n. 3 (3d Cir.1998); *Taylor Inv., Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1289 (3d Cir.1993); *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 n. 12 (3d Cir.1992). However, whether we lack jurisdiction over an unripe claim or simply decline to act because of judicial deference is of no practical significance to our disposition of this case.

*Assocs. v. Environmental Quality Bd.,* 164 Pa.Cmwlth. 326, 642 A.2d 642, 645 (1994)).

■ The first prong of the test, whether the issues are adequately developed for judicial review, itself contains two parts. The first is whether the asserted deprivation of rights (or entitlement to relief) is immediate or is hypothetical and contingent upon uncertain future events. Our Supreme Court has stated the following:

Only where there is a real controversy may a party obtain a declaratory judgment.

A declaratory judgment must not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic.

*Gulnac v. South Butler Sch. Dist.,* 526 Pa. 483, 487, 587 A.2d 699, 701 (1991) (citation omitted); *see also Ruszin v. Department of Labor & Indus., Bureau of Workers' Comp.,* 675 A.2d 366, 371 (Pa.Cmwlth. 1996). "A substantial contingency is the classic impediment to a pre-enforcement challenge [to a new statute]." *Artway v. Attorney Gen. of N.J.,* 81 F.3d 1235, 1248 (3d Cir.1996). The second part of the first prong is whether resolution of the constitutional or other legal dispute will involve substantial fact-finding. Obviously, the more fact intensive the dispute, the more significant the obstacle posed by the uncertainty of future events. The United States Supreme Court has explained as follows:

the reason [for] postponing decision until a constitutional issue is more clearly focused by, and receives the impact from, occurrence in particular circumstances is precisely that those circumstances may reveal relevancies that abstract, prospective supposition may not see or adequately assess.

*Communist Party v. Subversive Activities Control Bd.,* 367 U.S. 1, 78, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961).

The second prong of the ripeness test recognizes that, even where the case is not as fully developed for judicial review as the court would find appropriate, it may still address the merits if refusal to do so would work a demonstrable hardship on the parties. This could occur, for instance, if a new statute provided criminal sanctions for conduct that was believed to involve constitutionally protected speech. In that case, a preenforcement challenge might be heard so that the plaintiffs would not risk incarceration as the price of testing the law. *See, e.g., United States v. Loy,* 237 F.3d 251, 257 (3d Cir.2001).

The ripeness test was succinctly summarized in *Philadelphia Federation of Teachers* as follows:

A court should look to (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." Under the "fitness for review" inquiry, a court considers whether the issues presented are purely legal, as opposed to factual, and the degree to which the challenged action is final. The various factors that enter into a court's assessment of fitness include: whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; the extent to which a claim is bound up in the facts; and whether the parties to the action are sufficiently adverse.

The second prong focuses on the hardship that may be entailed in denying judicial review, and the determination whether any such hardship is cognizable turns on whether the challenged action creates a "direct and immediate" dilemma for the parties, such that the

lack of pre-enforcement review will put the plaintiffs to costly choices.

150 F.3d at 323 (citations omitted). Applying this test, we must conclude that the City's claims are not ripe for consideration.

■ In count one, the City contends that the PUC takeover of PGW will violate Article IX, Section 2 of the Pennsylvania Constitution relating to Home rule, in that the PUC takeover will "infringe on powers and duties of the [City] and [PGW] in violation of the Home Rule provisions of Art. IX, Sec. 2 of the Constitution of Pennsylvania." (Petition for Review, para. 27, at 7). In count two, the City effectively asserts that the provisions of the First Class City Bond Act forbid the PUC from assuming the functions of PGW and that the PUC's assumption of those functions will impair certain contracts entered into by PGW and impair the obligations of PGW pursuant to bonds it has issued.

As to the first prong of the test, whether the asserted deprivation of rights is immediate or hypothetical, it is certain that some of what the City complains of will come to pass. The City will lose control of PGW, which is certain. What is less certain is what will happen to the contracts into which PGW has entered and the fate of the bonds it has issued. We do not know what damages, if any, will flow or even be alleged from the PUC takeover. The City does not even speculate in its petition what may happen, only that its obligations will **in some way** be impaired. The City does not tell us how its obligations under the bonds will be impaired but merely complains that the PUC takeover will affect them adversely in some manner. Thus, we do not know what will happen and what, if any, injury the City will suffer under Act 21. The City does not ·present us with a controversy, but rather only with the possibility of unnamed harm that may occur under Act 21. Thus,

the petition fails to satisfy the first prong of the test.

As to the second prong of the ripeness test, the City does not aver and we.cannot discern that it will be put to costly choices if it is denied preenforcement review. It is not confronted with the dilemma of either refraining from constitutionally protected activity or risking prosecution. *See Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). The City risks no immediate harm when Act 21 goes into effect. It does not risk any sanction and its petition for review does not allege the loss of any revenue or other monetary damage that it will suffer when the PUC assumes control of PGW. If the PUC takeover should cause the City to suffer monetary or other damages or if an action should be brought against the City alleging that it has failed to perform some obligation and the City can trace that failure to the takeover by the PUC, there are adequate avenues in equity or law to compensate and protect the City.

The circumstances here are not unlike those described in *Cherry v. City of Philadelphia,* 547 Pa. 679, 685, 692 A.2d 1082, 1085 (1997), in which our Supreme Court concluded as follows:

> This Court need not reach the constitutional issue raised by appellant because his claim is not justiciable. Because appellant filed his declaratory judgment action before the City took any steps to assess or collect taxes or enforce the license provision, there is no actual controversy. Appellant has not suffered any damage nor is there an actual potential for damage as a result of the .City's letter to him notifying him of his violations. Where no actual controversy exists, a claim is not justiciable and a , declaratory judgment action cannot be maintained.

We find that counts one and two are simply unripe for determination.

Accordingly, the preliminary objections to counts one and two for lack of ripeness are sustained and, having denied the injunctive relief requested in count three, we dismiss the petition for review.

Judge PELLEGRINI concurs in result only.

Judge FRIEDMAN concurs in result only.

### ORDER

AND NOW, this 12th day of September, 2002, the preliminary objections of the Commonwealth of Pennsylvania and the Pennsylvania Public Utility Commission are sustained and the petition for review filed by the City of Philadelphia, et al. is dismissed, with prejudice.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

It is important to note that the instant proceeding was initiated as an action for declaratory judgment. As this Court has previously stated:

The provisions of the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531—7541, govern petitions for declaratory judgments. Declaratory judgments are not obtainable as a matter of right. Rather, whether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction.

Section 7533 of the Declaratory Judgments Act provides, in pertinent part, that "[a]ny person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa.C.S. § 7533. Under section 7533, constitutional challenges to a statute's validity, such as that raised in the instant matter, may be decided by declaratory judgment. Accordingly, in the instant declaratory judgment action, this court's inquiry concerns the ascertainment of the rights of the parties and whether protection for the rights asserted by Petitioner's can be judicially molded.

*Marrero v. Commonwealth,* 709 A.2d 956, 959–60 (Pa.Cmwlth.1998) (citations omitted).

As the majority correctly notes, although the Declaratory Judgments Act is to be liberally construed, one limitation on a court's ability to issue declaratory judgment is that the issues involved must be ripe for judicial determination. *Ruszin v. Department of Labor and Industry,* 675 A.2d 366 (Pa.Cmwlth.1996). Thus, as the Pennsylvania Supreme Court has stated, "[t]he presence of antagonistic claims indicating imminent and inevitable litigation coupled with a clear manifestation that the declaration sought will be of practical help in ending the controversy are essential to the granting of relief by way of declaratory judgment." *Gulnac v. South Butler County School District,* 526 Pa. 483, 487, 587 A.2d 699, 701 (1991).

In addition, in ruling on preliminary objections, this Court must accept as true all well pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. *Envirotest Partners v. Department of Transportation,* 664 A.2d 208 (Pa.Cmwlth.1995). This Court need not accept as true conclusions of law, unwarranted inferences from

facts, argumentative allegations, or expressions of opinion. *Id.* In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id.*

In Count I of the instant petition for review, the City alleges the following, in pertinent part:

27. On July 1, 2000, Respondents will assume powers and duties pursuant to Act 21 that infringe on powers and duties of the [City] and the Philadelphia Gas Commission in violation of the Home Rule provisions of Art. IX Sec. 2 of the Constitution of Pennsylvania.

28. Respondent, PUC, will assume powers and duties pursuant to Act 21's unconstitutional repeal of Sections 3–100(f), 3–909 and 5–902 of the Philadelphia Home Rule Charter as well as the First Class City Government Law and the First Class City Home Rule Act insofar as they are inconsistent with Act 21, however the [City's] voters and the individual Petitioners, as Philadelphia voters, have a vested constitutional right to the limitation on the Commonwealth's power by Art. IX Sec. 2 that mandates that, "adoption, amendment or repeal of a home rule charter *shall* be by *referendum*". (emphasis added).

29. Respondents' abrogation of the aforesaid sections of the Philadelphia Home Rule Charter insofar as they conflict with Act 21 infringes on the constitutional rights of the [City], Department of Public Property's Philadelphia Gas Commission and all of the abrogated rights are necessary to the City's rights and obligations under the First Class City Revenue Bond Act, therefore, the Act 21 attempt to supersede the specific Home Rule Charter sections is a nullity.

Petition for Review at 7–8.

Clearly, the foregoing averments demonstrate "[t]he presence of antagonistic claims indicating imminent and inevitable litigation coupled with a clear manifestation that the declaration sought will be of practical help in ending the controversy..." *Gulnac.* As a result, contrary to majority's assertion, Count I of the instant petition for review presents a claim that is ripe for our review.

In Count II of the instant petition for review, the City alleges the following, in pertinent part:

41. On December 29, 1972, the [City] enacted an Ordinance (Bill No. 455) entering into a contract between the [PFMC], and the [City] for the management and operation of the [PGW]. On the same date the contract was executed by PFMC pursuant to a resolution of the PFMC Board of Directors that was passed on December 13, 1972.

42. The contract between the [City] and PFMC defines the relationships, responsibilities, powers and duties among the PFMC, the Philadelphia Gas Commission, the [City] and the Department of Public Property of the City.

43. The enactment of Act 21 infringes on the contract between the City and PFMC as follows:

a. Powers granted to PFMC and the Gas Commission may not be inconsistent with Act 21;

b. Approval of enlargements or extensions of PGW's energy distribution system to retail customers is taken from the Gas Commission and the [City] and transferred to the [PUC] as are all other matters relating to customer service;

c. Act 21 abrogates the authority granted to the Gas Commission in the contract to fix and regulate rates and charges for supplying gas to retail

customers other than the City and the Philadelphia Board of Education;

d. Act 21 abrogates the authority of the Gas Commission (subject to approval of [the City]) to set rates for gas supplied to the City and the Board of Education;

e. Act 21 abrogates the Gas Commission's right to require that the design and accuracy of all gas testing apparatus be certified by the U.S. Bureau of standards;

f. Act 21 abrogates the Gas Commission's sole right to test the quality and pressure of gas;

g. Act 21 abrogates the Gas Commission's authority to approve changes to standards for gas and gas pressure parameters;

h. The Gas Commission is stripped of authority to make rules regarding pressure readings throughout the City and regarding the availability of those readings;

i. The Gas Commission is stripped of the authority to order PFMC to adjust gas pressures to limits the Gas Commission deems acceptable;

j. Act 21 removes the right of the Gas Commission[ or the City] to require that audited annual PGW statements be satisfactory in form and content;

k. Act 21 deletes the contract requirement that, "all ordinances, rules and regulations of the City regulating the safety of the piping and fixtures of houses or buildings shall be binding on PFMC."

44. The contractual affect of Act 21 is to impose the [PUC] as a party to various contracts without the agreement of intent of the original parties to the contracts.

Petition for Review at 10–12.

As the Pennsylvania Supreme Court has stated:

> The contracts clauses of the United States and Pennsylvania Constitutions protect contracts freely arrived at by the parties to them from subsequent legislative impairment or abridgment. *Beaver County Building and Loan Ass'n. v. Winowich,* 323 Pa. 483, 492–94, 187 A. 481, 485–86 (1936). *See Pennsylvania Labor Relations Bd. v. Zelem,* 459 Pa. 399, 406, 329 A.2d 477, 480 (1974); *Ministers and Missionaries Benefit Bd. v. Goldsworthy,* [385 A.2d 358, 362 (Pa.Super.1978)]. We have held that:
>
>> Any law which enlarges, abridges, or in any manner changes the intention of the parties as evidenced by their contract, imposing conditions not expressed therein or dispensing with the performance of those which are a part of it, impairs its obligation, whether the law affects the validity, construction, duration, or enforcement of the contract[.]
>>
>> . . . .
>>
>> The *amount* of impairment of the substantive obligation of a contract is immaterial. Any deviation from its terms, however slight, falls within the meaning of the constitution[.]

*Beaver County Building and Loan Ass'n., supra* 323 Pa. at 492–93, 187 A. at 485 (citations omitted) (emphasis in original). A later law cannot abridge rights under a prior contract. The only substantive laws in effect when the parties enter into a contract are implicitly incorporated into it. *DePaul v. Kauffman,* 441 Pa. 386, 398, 272 A.2d 500, 506 (1971); *Beaver County Building and Loan Ass'n., supra* 323 Pa. at 489, 187 A. at 484.

*First National Bank of Pennsylvania v. Flanagan,* 515 Pa. 263, 269–270, 528 A.2d 134, 137–138 (1987).

In light of the foregoing, it is clear that the averments in Count II of the petition for review also demonstrate "[t]he presence of antagonistic claims indicating imminent and inevitable litigation coupled with a clear manifestation that the declaration sought will be of practical help in ending the controversy…" *Gulnac.* As a result, contrary to majority's assertion, Count II of the instant petition for review also presents a claim that is ripe for our review.

Accordingly, unlike the majority, I would overrule the Commonwealth's preliminary objections to the instant petition for review.